Samuel C. Coleman, J.
The plaintiff is a local union of paper hangers affiliated with the national Brotherhood of Painters, Decorators and Paperhangers. Its immediate affiliation is with a district council, which embraces a number of local unions in this area — 11 in all. The district council is the defendant; but the plaintiff’s quarrel is with the brotherhood as well as with the council. The controversy between the local, the district council and the brotherhood stems from the attempt of the latter two bodies to change without the local’s approval the basis upon which the paper hangers have negotiated with employers and upon which they have been paid — a change from a piecework basis, which has been in effect in the 60-year history of affiliation of the plaintiff with the brotherhood, to an entirely different basis. The council would be permitted to negotiate with employers “ either on the basis of a price list [piecework], or an hourly rate, or on a combination of both ”. The plaintiff’s position is that the council and the brotherhood are powerless to compel the change and that the local union is free to carry on wage and pay negotiations with employers, in co-operation with the council, but upon a piecework basis. I believe it is correct in its contention. There are other aspects of the case to be considered later.
The plaintiff is the only paper hangers’ local union in this area and although of necessity it co-operated with the other 10 locals affiliated with the district council in wage and pay negotiations, it has always done so upon a separate and special —I do not say privileged — basis. Painters were paid upon an hourly basis, and an increase in their wages would be reflected in an increase received by the paper hangers for the amount of work they performed. There was. then some coefficient of equivalence with consequent unified action, but the outcome, no matter how arrived at — whether by vote of all the locals, by separate negotiations of the paper hangers after the terms for painters had been established — was always a separate “paperhangers price list” fixing the compensation to be paid paper hangers by employers and always on a piecework basis. ‘ ‘ All paperhangers work shall be done by the Piece, according to this Price List” recites the agreements between the district council, representing the 11 locals within its area, including the plaintiff, and the employers, for the periods from August 1, 1954 to July 31, 1956 and August 1, 1956 to July 31,1959.
Before the agreement for the period commencing August 1, 1956 came into being, differences had arisen between the plaintiff and the district council. The council had proposed an hourly *565 wage rate for paper hangers. The plaintiff protested to the brotherhood. “ For more than fifty (50) years members of Local Union 490 have been working on a Piece Kate System,” it said, in explaining its protest (June 19, 1956). The brotherhood, acting upon the protest, instructed the council “not [to proceed] with the negotiation of agreement pertaining to local union No. 490. Section 154 of Brotherhood constitution clearly defines that local’s autonomy which prevails in this issue on agreement.” The district council, at its meeting of July 11, 1956, with these instructions before it, in effect dismissed the local from the council and, over the protest of the local’s delegates, directed the local ‘ ‘ to immediately negotiate their own Agreement with the Employers in their jurisdiction.” The minutes read that ‘ ‘ the Officers of the Council of District Council 9 had met with a Committee of Local Union 490 * * * and had asked that, since Local Union 490 is desirous of full autonomy as against the semi-autonomous standing they have had for all these years, they take steps to the responsibility of an Autonomous Local Union.” The paper hangers again protested the action of the council to the brotherhood. Conferences followed and an agreement of reaffiliation, approved by the brotherhood, was entered into (Aug. 31,1956). Among other things, the local was to “ be bound in all respects by the By-Laws of District Council No. 9 and shall be subject to the jurisdiction of the District Council in the negotiation and enforcement of agreements s * * The District Council recognizes and agrees to the continuance of the Paperhangers Price List as the method of compensation for all work done by paperhangers, and the District Council may not, without the approval of Local 490, insist upon any other method of compensation for paperhangers * * * All agreements that have been signed between [the local and employers] shall be embodied into and become part of the agreements between Council and the employers.”
The relation between local and district council remained in this posture until early this year, when the council proposed changes in the by-laws which, among other things, provided that all agreements — paper hangers and painters — were to be “on an hourly rate basis.” The proposal was put to a referendum of all the locals in the council, plaintiff included (it protested the referendum), and was overwhelmingly approved; the plaintiff alone voting against it. The brotherhood ratified the changes except one. Instead of requiring the council to negotiate in behalf of the paper hangers on an hourly rate basis, it permitted negotiation “ either on the basis of a *566 price list, or an hourly rate, or on a combination of both. ’ ’ It is this new by-law — in itself a distinct departure from the by-law approved upon referendum — which the plaintiff opposes. Its position is that history, of course of dealings, interpretation by the brotherhood of its own by-laws — all lead to the conclusion that negotiations for paper hangers’ compensation, whether initiated by it or by the council in its behalf, must be upon the piecework basis.
These factors do tend in the plaintiff’s favor. Compensation has always been on a piecework basis; and the special position of paper hangers in this respect (as well as in others) has been recognized by the council in its own by-laws. In referring to the rights and privileges of local unions or their members, the plaintiff local was explicitly included or excluded (§ 8 “ each member of all affiliated Painters’ local unions, including the members of Local 490 and other autonomous local unions, shall ”, etc.; similarly § 9. Sections 3, 5, and 7 include “ autonomous unions ” in affiliated unions). Plainly the paper hangers’ union had a special status. When the council proposed the change in 1956, the brotherhood, in directing it not to proceed in the sense proposed, did so in reliance upon section 154 of the brotherhood constitution, which, in its opinion, made the plaintiff local “ autonomous ” in the matter of method of compensation. That section is as follows: ‘ ‘ Sec. 154. Each local union shall frame its own by-laws, which shall in no way conflict with the Constitution of the Brotherhood or, where one exists, with the constitution and working rules of the district council. All by-laws and scales of wages shall be submitted, in triplicate, to the district council (if any) with which the local is affiliated and to the G\ E. B., for their approval, before being printed or enforced.” The by-laws of the local required its secretary to ‘1 furnish Union employers with a Price List” [piecework]. “ It shall be the duty of each member to adhere strictly to the Price List ’ ’.
When the council, upon receiving the instructions and opinion of the brotherhood, attempted, in effect, to remove the plaintiff’s affiliation by making it “ fully autonomous ” “ as against the semi-autonomous standing they have had for all these years ”, the plaintiff again protested and the brotherhood again intervened and the agreement of August 31, 1956 to which I have referred resulted upon the instigation and with the approval of the brotherhood. Whether that agreement is called a ‘1 contract ” between the parties (unlimited in time according to the defendant and therefore “ void as against public policy ”) ; whether it only 11 resolv[ed] certain differences ”, what it accom *567 plished was this, in the language of the council in the agreement it made with employers for the three-year period from August 1, 1956 to July 31, 1959 : “ The Paperhangers’ Local Union 490 has re-established its former organizational relationship with District Council No. 9, and paper-hanging is now to be done as called for in the Trade Agreement and in accordance with all its regulations ” (p. 43). That agreement provided that “All paperhanging work shall be done by the Piece, according to this Price List” (p. 22). The statement that the plaintiff had ‘ ‘ re-established its former organizational relationship ” is a reaffirmation of the special status of the plaintiff, recognized by the brotherhood and by the council.
It is unnecessary to consider the precise effect of the agreement of August, 1956 — to consider whether it gives the plaintiff local greater rights than it had before. The plaintiff is not asking for such rights; it asks only that it be accorded the “ rights ” it possessed under “ its former organizational relationship ”. Among these “rights” — by the brotherhood’s interpretation of its own constitution — was the “right”’ of the plaintiff of deciding its basis of compensation. That “right” has been taken away from it; and its protest is a valid one. That this conclusion may result in a permanent fixing of the method of compensation is beside the point; the fixing was no less permanent before the 1956 agreement. Economic conditions in the future may suggest a change in the plaintiff’s attitude toward the method of compensation, if they do not compel it.
An additional point in the plaintiff’s favor is the nature of the action taken by the brotherhood. Under sections 226 and 227 of the brotherhood constitution changes in the by-laws of a district council, after receiving a majority vote of members of the locals, must be submitted to the brotherhood to be “ approved or corrected ” (§ 226), “ for approval ” (§ 227). The brotherhood disapproved the proposed change in the method of compensation and voted to insert in its place the following: “ In the negotiation of trade agreements in the paperhanging industry in the jurisdiction of District Council' No. 9, the District Council may negotiate either on the basis of a price list, or an hourly rate, or on a combination of both. It is further provided that the paperhangers’ negotiations now pending shall be continued on the basis of either a price list or an hourly rate, or a combination of both.”
In doing so, the brotherhood exceeded its powers. It did not approve, and its conduct was not, a “correction”. The district council had voted to do away with the piecework system. *568 What the brotherhood did was to reject this vote and throw the entire responsibility upon the district council — a proposal completely at variance with what the council had decided to do. This was a rejection of the referendum and a substitution of the brotherhood’s own views.
There were 17 proposed amendments, a number of them relating in one way or another to the piecework system. These provisions were attempted to be eliminated, but the attempt must fail; they are amendments numbered in the Referendum 5, 6, 8, 9, 14 and 15.
Other amendments of importance relate to the compensation of the business agent of the plaintiff. For years all business agents of the local unions in the council have received the same compensation (which was the prevailing weekly rate of journeymen painters), but the council paid only one half of the plaintiff’s agent, leaving it to the plaintiff to pay the other half. The other business agents received their full compensation from the council. The proposed amendments would restrict the compensation of the plaintiff’s business agent to $200 a week and $50 a week for expenses (an increase in the expense allowance from $20). In view of the plaintiff’s special postion and the long-standing and accepted difference in compensation paid by the council to the plaintiff’s agent, in comparison with the other agents, I see no reason why the council should not by proper vote set an outer limit to the salary of the plaintiff’s agent. The plaintiff’s agent, who deals with the affairs of one local only, may be thought to have less onerous responsibilities than the others. And it has not been shown that the new rate was arrived at arbitrarily or capriciously or in the expectation that it would hamper the plaintiff’s actions. These amendments should stand: 2, 3A, 3B, 30.
The remaining amendment of importance has the effect, in the plaintiff’s view, of destroying its “ monopoly ” over paperhanging work in the council’s area. This is the amendment: “ It is further provided that however, paperhanging work may be performed by Journeymen Painters of District Council No. 9 whenever any paperhanger or group of paperhangers shall refuse to work unlawfully, or in violation of the rules, regulations, provisions or By-Laws of District Council No. 9, or when such refusal to work on the part of any paperhanger, or paperhangers constitutes unlawful stoppage or strike, or is considered to be in violation of the rules, regulations, provisions or By-Laws of District Council No. 9.”
But this amendment does not impair the plaintiff’s “ monopoly it preserves it but upon condition — a proper one — that *569 the plaintiff, as a quasi-independent union, or its members, do nothing to impair the orderly operations of the council — within itself and vis-a-vis employers, in the work of painting and paper hanging. If the plaintiff wishes to retain its special position and at the same time remain an integral part of the council, it should be prepared to do its part in attaining orderliness in both branches of work, paper hanging and painting. It was a supposed unauthorized strike by the paper hangers in the Fall of 1962 that precipitated the action leading to the referendum. The plaintiff should not complain, if, assuming it does transgress, the council should attempt to discharge its obligations under its agreement with employers by supplying paper hangers from the other unions (painters) in the council. This provision not only makes for orderly trade relations but it disposes of the argument made by the defendant that I have already mentioned: the ‘1 permanence ’ ’ of the relation between the plaintiff and the district council. That relation is “ permanent ” only as the plaintiff discharges its obligation, a matter always subject to the control of the brotherhood (§§ 259-260). Amendment 4 will stand.
Let a decree be settled in accordance with the foregoing.